THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JONATHAN TRENT MASSA,**

    *Plaintiff*,

   **v.**                                            **Case No.**

**TEAMSTERS LOCAL UNION 79**
**and**
**UNITED PARCEL SERVICE, INC.,**

    *Defendants*.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JONATHAN TRENT MASSA ("MASSA" or "Plaintiff"), by and through his undersigned attorneys, states as follows in his Complaint against Defendants TEAMSTERS LOCAL UNION 79 (the "Union") and UNITED PARCEL SERVICE, INC. ("UPS"), (collectively "Defendants"), and in support thereof states as follows:

### INTRODUCTION

1. This is an action to secure relief, legal, equitable, injunctive, and punitive, based upon UPS' discriminatory employment practices, and the Union's discriminatory labor organization practices in violation of Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. as amended by the Americans with Disabilities Act of 2008 ("ADAAA"). Additionally, both Defendants discriminated against Massa in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") because of Massa's race.

2. Title I of the ADA prohibits labor unions from discriminating against qualified individuals with disabilities. *See* 42 U.S.C. § 12111-12117.

3. § 2000e-2(c) of Title VII, Congress established a statutory scheme prohibiting a broad array of discriminatory conduct by unions. The statute makes it unlawful for a labor to discriminate against an individual in its labor organization practices.42 U.S.C. § 2000e-2(c).

4. In violation of Title VII and the ADA, both UPS and the Union discriminated against Massa during his employment with UPS because of Massa's disability and race. Along with being terminated, Massa was retaliated against and terminated for complaining about racial discrimination and disability discrimination.

5. UPS and the Union engaged in a pattern of discrimination against Massa. The Defendants enabled, tolerated, and purposefully promoted and encouraged a culture of racism and racially discriminatory conduct to take root at a Tampa, Florida Distribution Center. At first, Massa filed numerous grievances with the Union regarding racial discrimination by UPS. However, neither Defendant acted upon Massa's complaints. Instead, this discriminatory culture permeated employment decisions regarding Massa, including those related to pay, discipline, promotions, assignment to undesirable positions, and assignment to the most physically demanding job duties. When Massa became seriously injured, the Defendants proceeded to additionally discriminate against Massa on the basis of a physical disability by delaying his request for medical and disability leave. Finally, Massa was instructed by UPS and the Union of an option of either a $250 payment for open grievances if Massa resigned, or be terminated. Massa did not accept the $250 payment option.

6. Massa requests declaratory and injunctive relief to redress both UPS' discriminatory employment policies, practices, and procedures, and the Union's discriminatory

policies, practices, and procedure. Massa further seeks back pay; front pay; compensatory damages; nominal, liquidated and punitive damages; and attorneys' fees and costs.

## PARTIES

7. Massa is an individual over eighteen years of age, residing and domiciled in Hillsborough County, Florida and is otherwise sui juris. During all relevant times, Massa was an "employee" as defined by Title VII and the ADA.

8. Defendant UPS is incorporated in the state of Delaware with its headquarters in Atlanta, Georgia; has become the world's largest package delivery company; does business throughout Florida, including operating a Distribution Center at 5201 Eagle Trail Drive, Tampa, Florida, in Hillsborough County. At all times material hereto, UPS has been an "employer" as defined by Title VII and the ADA.

9. At all relevant times material hereto, the Union was the bargaining agent of UPS' employees, including Massa, and was a labor organization as defined by Title VII and the ADA. The Union's business address is 5818 E. Dr. Martin Luther King Jr. Blvd., Tampa, Florida, 33619.

## JURISDICTION AND VENUE

10. Venue is proper in this Judicial Circuit as all the events arising out of this cause arose in this Judicial District. Venue of this action is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

11. Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §1331, 42 U.S.C. § U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 12101 *et seq*. under the ADA. This Court may exercise supplemental jurisdiction over Perdomo's FCRA claims pursuant to 28 U.S.C. §1367(a), as the

Plaintiff's state and federal claims arise out of a common nucleus of operative fact, as more fully set forth below.

## ADMINISTRATIVE PROCEEDINGS

12. On June 3, 2021, Massa filed a Dual Charge of Discrimination against UPS with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR"), charging UPS with discrimination based on disability and race, a true and accurate copy of which is attached hereto as **Exhibit A** ("Charge") and incorporated herein. (EEOC Charge No. 511-2021-01909).

13. Also on June 3, 2021, Massa filed a Dual Charge of Discrimination against the Union with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR"), charging the Union with discrimination based on disability and race, a true and accurate copy of which is attached hereto as **Exhibit B** ("Charge") and incorporated herein. (EEOC Charge No. 511-2021-01911).

14. In its Charge(s) Massa alleges that UPS and the Union discriminated against him on the basis of disability and race, which are actionable violations of Title VII and the ADA. Massa has also alleged that the Defendants retaliated against him in violation of Title VII and the ADA.

15. With respect to Massa's Charge(s), the EEOC issued two Notice of Right to Sue letters dated January 13, 2022, based on Massa's allegations, a true and accurate copy(s) of which is attached hereto as **Exhibit C**,

16. Massa filed this lawsuit on April 8, 2022, within 90 days of the date that each Notice of Rights was received by Massa.

17. Massa timely filed his Charge(s) of discrimination with the EEOC and has met all administrative prerequisites for the bringing of this action.

## FACTUAL ALLEGATIONS

18. At all times relevant to this action, Massa was employed by UPS as a package handler and was a member of the Union.

19. UPS and the Union entered into a collective bargaining agreement covering the terms and conditions of employment for employees such as himself (the "CBA").

### RACE DISCRIMINATION AND RETALIATION

20. Massa repeatedly filed grievances with the Union addressing race discrimination complaints against UPS.

21. Massa's race is "Native Hawaiian or Other Pacific Islander".

22. Due to his race, UPS provoked Massa and then would discipline him when he objected to the mistreatment.

23. Massa was adversely singled-out to work different hours than his white co-workers.

24. Massa's white co-workers were also given preferential treatment in the form of promotions – such as delivery driver positions.

25. In discriminatory fashion, UPS failed Massa when he took a driving to test for a promotion to become a delivery driver.

### DISABILITY DISCRIMINATION AND RETALIATION

26. While employed with the defendant UPS, Massa was injured during non-working hours.

27. Specifically, on November 20, 2019, Massa ruptured the patella tendon in his right knee while playing recreational basketball at a private fitness club.

28. The day after rupturing his patella tendon, Massa sent text massages to "Liz" (UPS building manager), Joey Howard and "Alan" (Union representatives) with pictures of his injury.

29. On November 22, 2019, Massa then proceeds to file for leave under the Family Medical and Leave Act ("FMLA") but is informed that he did not qualify.

30. Massa undergoes right knee surgery to repair the ruptured patella tendon on December 10, 2019.

31. On January 17, 2020, Massa's physicians informed him that his medical insurance coverage has been cancelled and that Massa is liable for the payment of his medical treatment.

32. On February 6, 2020, Massa spoke with Union representative "Alan regarding the cancellation of his medical insurance, and ineligibility for FMLA leave.

33. Only then, after two months since Massa's knee injury, Defendants instruct Massa to pursue short-term disability leave.

34. However, Desiree Garcia, UPS human resources representative, delays Massa's application for months and is unresponsive to Massa's telephone calls and cellular text messages.

35. Nearly four months later, on May 30, 2020, Massa finally communicated with Desiree Garcia to complete the short-term disability application.

36. Massa's knee injury inflicted him with a disability that severely limited his motion, but his physician estimated that he would be able to return to work after July 1, 2020.

37. Massa was qualified to perform the essential duties of his position as package handler.

38. Nevertheless, Defendants did not engage in any meaningful discussion with Massa to return to work because of his race, and because of his disability.

**MASSA'S DISCRIMINATORY TERMINATION BECAUSE OF RACE AND DISABILITY**

39. Instead of allowing Massa to return to work notwithstanding his disability, Massa was contacted by the Union on October 13, 2020 on behalf of UPS with "…a offer of $250 for your open grievances and also asking for a resignation instead of being fired per labor manager Fred Dore…to clear the log".

40. UPS and Union aided and abetted one another to cause Massa's unlawful termination when Massa did not accept the $250 resignation offer.

41. UPS and Union communicated regularly with each other, yet remained indifferent to Massa's requests for assistance in regards to his employment and medical disability.

42. UPS tolerated and cultivated a work environment that discriminated against Massa because of his race and disability.

43. The Union also ignored, disregarded, minimized, covered up, mishandled, or otherwise failed to respond properly to evidence of race and disability discrimination by UPS.

**COUNT I – against UPS**

**WRONGFUL DISCHARGE (VIOLATION OF ADA)**
**42 U.S.C. §§ 12101,** *et seq.*

44. Massa re-alleges and incorporates by reference paragraphs 1 through 43 as though fully set forth herein.

45. UPS violated the rights of Massa under the Americans With Disabilities Act, 42 U.S.C. 12101, *et. seq.*, as amended ("ADA").

46. UPS is an employer subject to the ADA.

47. Massa is a qualified individual with actual disabilities, having a record of disabilities, and/or is regarded by UPS has having disabilities – specifically a physical disability in the form of a leg and knee impairment affecting mobility.

48. Massa's physical disability substantially limits one or more major life activities including, but not limited to, seating for long periods, walking, bending, concentrating.

49. Massa is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of her position as "Package Handler" at UPS.

50. UPS discriminated against Massa on the basis of his disability by terminating his employment on the basis of his disability.

51. At all relevant times, Massa's disability was known to UPS when he was discriminated against by UPS.

52. UPS' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Massa, entitling Massa to punitive damages.

53. Massa has suffered damages as a result of UPS' unlawful actions.

**WHEREFORE**, Massa respectfully requests that the Court enter judgment in his favor and award him the following relief:

A. An Order declaring that UPS violated his civil rights under the ADA;

B. Back pay, front pay, and other benefits lost as a result of Massa unlawfully being discriminated against;

C. Compensatory and punitive damages in an amount to be determined at trial to compensate him for the emotional pain, embarrassment, humiliation, mental anguish,

inconvenience, loss of enjoyment of life, and detrimental impact on his health caused by UPS' unlawful actions;

      D.      The attorneys' fees and costs incurred by him; and

      E.      Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of ADA, including an award of punitive damages, and injunctive relief requiring UPS to create new policies and procedures to address disability discrimination.

### COUNT II – against UPS

### RETALIATION (VIOLATION OF ADA)
### 42 U.S.C. § 12203

54.      Massa re-alleges and incorporates by reference paragraphs 1 through 43 as though fully set forth herein.

55.      UPS violated the rights of Massa under the Americans With Disabilities Act, 42 U.S.C. 12101, *et. seq.*, as amended ("ADA").

56.      UPS is an employer subject to the ADA.

57.      Massa is a qualified individual with actual disabilities, having a record of disabilities, and/or is regarded by UPS has having disabilities – specifically a physical disability in the form of a leg and knee impairment affecting mobility.

58.      Massa's physical disability substantially limits one or more major life activities including, but not limited to, seating for long periods, walking, bending, concentrating.

59.      Massa is a qualified individual with a disability because, with or without reasonable accommodation, he is able to perform the essential functions of her position as "Package Handler" at UPS.

60. At all relevant times, Massa's disability was known to UPS when he was discriminated against by UPS.

61. Massa engaged in statutorily protected expression by taking short-term disability leave (and inquiring into FMLA leave) to rehabilitate after major knee surgery that was tantamount to an accommodation request.

62. UPS had notice that Massa's undergoing rehabilitation for his major leg surgery severely affected mobility and that Massa would require further accommodation.

63. UPS then discharged Massa in retaliation for pursuing his rights under the ADA.

64. A reasonable employee would find UPS' retaliatory act(s) materially adverse and such act would dissuade a reasonable person from making or supporting a charge of discrimination.

65. UPS' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Massa, entitling Massa to punitive damages.

**WHEREFORE**, Massa respectfully requests that the Court enter judgment in his favor and award him the following relief:

A. An Order declaring that UPS violated his civil rights under the ADA;

B. Back pay, front pay, and other benefits lost as a result of Massa unlawfully being discriminated against;

C. Compensatory and punitive damages in an amount to be determined at trial to compensate him for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, loss of enjoyment of life, and detrimental impact on his health caused by UPS' unlawful actions;

D. The attorneys' fees and costs incurred by him; and

E.     Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of ADA, including an award of punitive damages, and injunctive relief requiring UPS to create new policies and procedures to address disability discrimination.

## **COUNT III – against UNION**

### **WRONGFUL DISCHARGE (VIOLATION OF ADA)**
### **42 U.S.C. §§ 12101,** *et seq.*

66.    Massa re-alleges and incorporates by reference paragraphs 1 through 43 as though fully set forth herein; along with paragraphs 10 through 20 of the related claim against UPS presented in Count I.

67.    Defendant Union's refusal to represent Massa was motivated by a discriminatory animus regarding Massa's record of disabilities, and/or regarded by Union as has having disabilities.

68.    Massa repeatedly asked the Union for assistance regarding disability discrimination, but the Union remained indifferent.

69.    Union refused to assist Massa due to his membership in a protected class.

70.    The Union discriminated against Massa on the basis of his disability by causing Massa's termination of his employment.

71.    The Union's policies, practices, and procedures resulted in continuing unlawful discrimination of Massa with respect to his terms and conditions of employment.

72.    Union's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Massa, entitling Massa to punitive damages.

**WHEREFORE**, Massa respectfully requests that the Court enter judgment in his favor and award him the following relief:

A.  An Order declaring that the Union violated his civil rights under the ADA;

B.  Back pay, front pay, and other benefits lost as a result of Massa unlawfully being discriminated against;

C.  Compensatory and punitive damages in an amount to be determined at trial to compensate him for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on his health caused by the Union's unlawful actions;

D.  The attorneys' fees and costs incurred by him; and

E.  Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of the ADA, including an award of punitive damages, and injunctive relief requiring Defendant to create new policies and procedures to address disability-based discrimination.

## COUNT IV – against UNION

### RETALIATION (VIOLATION OF ADA)
### 42 U.S.C. § 12203

73. Massa re-alleges and incorporates by reference paragraphs 1 through 43 as though fully set forth herein; along with paragraphs 10 through 20 of the related claim against UPS presented in Count II.

74. Massa repeatedly asked the Union for assistance regarding retaliation for disability discrimination, but the Union remained indifferent.

75. Defendant Union's refusal to represent Massa was motivated by a discriminatory animus regarding Massa's record of disabilities, and/or regarded by Union as has having disabilities.

76. Massa repeatedly asked the Union for assistance regarding disability discrimination, but the Union remained indifferent.

77. The Union discriminated against Massa on the basis of his disability by causing Massa's termination of his employment.

78. A reasonable employee would find the Union's retaliatory act(s) materially adverse and such act would dissuade a reasonable person from making or supporting a charge of discrimination.

79. The Union's policies, practices, and procedures resulted in continuing unlawful discrimination of Massa with respect to his terms and conditions of employment.

80. Union's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Massa, entitling Massa to punitive damages.

**WHEREFORE**, Massa respectfully requests that the Court enter judgment in his favor and award him the following relief:

A. An Order declaring that the Union violated his civil rights under the ADA;

B. Back pay, front pay, and other benefits lost as a result of Massa unlawfully being discriminated against;

C. Compensatory and punitive damages in an amount to be determined at trial to compensate him for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on his health caused by the Union's unlawful actions;

D. The attorneys' fees and costs incurred by him; and

E.       Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of the ADA, including an award of punitive damages, and injunctive relief requiring Defendant to create new policies and procedures to address disability-based discrimination.

## COUNT V – against UPS

### WRONGFUL DISCHARGE (VIOLATION OF TITLE VII)
### 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 2000e-2a

81.      Massa re-alleges and incorporates by reference paragraphs 1 through 43 as though fully set forth herein.

82.      UPS, an employer of Massa within the meaning of Title VII, has discriminated against Massa in violation of Title VII by discharging him because of his race.

83.      During the course of his employment, Massa filed numerous racial discrimination grievances with his union, and also complained to human resources, and his superiors concerning race discrimination.

84.      UPS also subjected Massa to discrimination by treating him differently from, and less preferably than, similarly situated employees of a different race than Massa.

85.      UPS ignored grievances filed by Massa.

86.      Massa was an industrious and exemplary employee during his employment with UPS.

87.      UPS' wrongful discharge of Massa was a direct, proximate, and pretextual result of racial discrimination.

88.      UPS' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Massa, entitling Massa to punitive damages.

**WHEREFORE**, Massa respectfully requests that the Court enter judgment in his favor

and award him the following relief:

    A.    An Order declaring that UPS violated his civil rights under Title VII;

    B.    Statutory and equitable damages including back pay, front pay, and other benefits lost as a result of Massa unlawfully being discriminated against;

    C.    Compensatory and punitive damages in an amount to be determined at trial to compensate him for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, loss of enjoyment of life, and detrimental impact on his health caused by UPS' unlawful actions;

    D.    The attorneys' fees and costs incurred by him; and

    E.    Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of Title VII, including an award of punitive damages, and injunctive relief requiring Defendant to create new policies and procedures to address gender-based discrimination.

### COUNT VI – against UPS

**RETALIATION (VIOLATION OF TITLE VII)**
**42 U.S.C. § 2000e-3(a)**

89.    Massa re-alleges and incorporates by reference paragraphs 1 through 43 as though fully set forth herein.

90.    Massa engaged in protected activity that included, but is not limited to, complaining to UPS about race discrimination at the workplace.

91.    Massa openly opposed race discrimination at UPS, and on numerous occasions complained to human resources, his superiors, and also filing grievances with his union to address and rectify the race discrimination.

92. UPS also treated Massa differently from, and less preferably than, similarly situated employees of a different race than Massa.

93. UPS ignored grievances filed by Massa.

94. UPS discharged Massa in retaliation for his discrimination complaints.

95. UPS' retaliatory action(s) against Massa were a direct and proximate result of his protected activities.

96. A reasonable employee would find UPS' retaliatory act(s) materially adverse and such act would dissuade a reasonable person from making or supporting a charge of discrimination.

97. UPS' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard to Massa's rights, entitling her to punitive damages.

**WHEREFORE**, Massa respectfully requests that the Court enter judgment in his favor and award him the following relief:

A. An Order declaring that UPS violated his civil rights under Title VII;

B. Back pay, front pay, and other benefits lost as a result of his unlawfully being discriminated against;

C. Compensatory and punitive damages in an amount to be determined at trial to compensate him for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on his health caused by UPS' unlawful actions;

D. The attorneys' fees and costs incurred by him; and

E. Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of Title VII, including an award of punitive damages, and injunctive relief requiring UPS to create new policies and procedures to address gender-based discrimination.

## COUNT VII – against UNION

**WRONGFUL DISCHARGE (VIOLATION OF TITLE VII)**
**42 U.S.C. §§ 2000e,** *et seq.***, 42 U.S.C. § 2000e-2a**

98. Massa re-alleges and incorporates by reference paragraphs 1 through 43 as though fully set forth herein; along with paragraphs 10 through 20 of the related claim against UPS presented in Count V.

99. The Union's refusal to represent Massa was motivated by a discriminatory animus because of Massa's race.

100. Aside from filing numerous grievances, Massa repeatedly asked the Union for assistance regarding race discrimination, but the Union remained indifferent.

101. The Union refused to assist Massa due to his membership in a protected class.

102. The Union also subjected Massa to racial discrimination by treating him differently from, and less preferably than, similarly situated members of a different race than Massa.

103. The Union ignored grievances filed by Massa.

104. The Union discriminated against Massa on the basis of his race by causing Massa's termination of his employment.

105. The Union's policies, practices, and procedures resulted in continuing unlawful discrimination of Massa with respect to his terms and conditions of employment.

106. UPS' wrongful discharge of Massa was a direct, proximate, and pretextual result of racial discrimination by the Union..

107. A reasonable employee would find UPS' retaliatory act(s) materially adverse and such act would dissuade a reasonable person from making or supporting a charge of discrimination.

108. The Union's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Massa, entitling Massa to punitive damages.

**WHEREFORE**, Massa respectfully requests that the Court enter judgment in his favor and award him the following relief:

A. An Order declaring that the Union violated his civil rights under Title VII;

B. Statutory and equitable damages including back pay, front pay, and other benefits lost as a result of Massa unlawfully being discriminated against;

C. Compensatory and punitive damages in an amount to be determined at trial to compensate him for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, loss of enjoyment of life, and detrimental impact on his health caused by the Union's unlawful actions;

D. The attorneys' fees and costs incurred by him; and

E. Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of Title VII, including an award of punitive damages, and injunctive relief requiring the Union to create new policies and procedures to address gender-based discrimination.

### COUNT VIII – against UNION

### RETALIATION (VIOLATION OF TITLE VII)
### 42 U.S.C. § 2000e-3(a)

109. Massa re-alleges and incorporates by reference paragraphs 1 through 43 as though fully set forth herein; along with paragraphs 10 through 20 of the related claim against UPS presented in Count VI.

110. Massa repeatedly asked the Union for assistance regarding retaliation for race discrimination, but the Union remained indifferent.

111. Massa engaged in protected activity that included, but is not limited to, complaining to the Union about race discrimination at the workplace.

112. Massa openly opposed race discrimination at UPS, and on numerous occasions complained to Union representatives, and also by filing grievances with the Union to address and rectify the race discrimination.

113. Defendant Union's refusal to represent Massa was motivated by a discriminatory animus because of Massa's race.

114. Massa repeatedly asked the Union for assistance regarding race discrimination, but the Union remained indifferent, and also ignored grievances filed by Massa.

115. The Union retaliated against Massa on the basis of his race by causing Massa's termination of his employment.

116. The Union's policies, practices, and procedures resulted in continuing unlawful discrimination of Massa with respect to his terms and conditions of employment.

117. The Union's retaliatory action against Massa were a direct and proximate result of his protected activities.

118. A reasonable employee would find the Union's retaliatory act(s) materially adverse and such act would dissuade a reasonable person from making or supporting a charge of discrimination.

119. The Union's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard to Massa's rights, entitling her to punitive damages.

**WHEREFORE**, Massa respectfully requests that the Court enter judgment in his favor and award him the following relief:

A. An Order declaring that the Union violated his civil rights under Title VII;

B. Back pay, front pay, and other benefits lost as a result of his unlawfully being discriminated against;

C. Compensatory and punitive damages in an amount to be determined at trial to compensate him for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on his health caused by the Union's unlawful actions;

D. The attorneys' fees and costs incurred by him; and

E. Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of Title VII, including an award of punitive damages, and injunctive relief requiring the Union to create new policies and procedures to address gender-based discrimination.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Massa demands a trial by jury in this action.

Dated: April 4, 2022                                    Respectfully submitted,

/s/ *Derek P. Usman*
Derek P. Usman
Florida Bar No. 0120303
Email: derek@usmanfirm.com
**The Usman Law Firm, P.A.**
505 E Jackson Street, Suite 305
Tampa, FL 33602
(813) 377-1197 telephone

*Attorney for Plaintiff*