THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JONATHAN TRENT MASSA,

       Plaintiff,

v.                        Case No.: 8:22-cv-796-KKM-JSS

TEAMSTERS LOCAL UNION 79
and
UNITED PARCEL SERVICE, INC.,

       Defendants.

_____/

## DEFENDANT TEAMSTERS LOCAL UNION 79's RULE 56 MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(a), Fed. R. Civ. P. Defendant TEAMSTERS LOCAL UNION 79 ["Local 79" or "Union"] hereby moves for entry of an Order granting Summary Judgment in its favor on all claims asserted against LOCAL 79 in Plaintiff JONATHAN TRENT MASSA's ["Massa"] Amended Complaint filed May 27, 2022 (doc. 12), i.e., Count III (alleging wrongful discharge in violation of the Americans With Disabilities Act ["ADA"]; Count IV (alleging retaliation in violation of the ADA); Count VII (alleging wrongful discharge in violation of Title VII based on race); and Count VIII (alleging retaliation in violation of Title VII). Summary judgment is due to be granted because there is no genuine dispute as to any material fact and Local 79 is entitled to judgment as a matter of law.

All of Massa's claims against Local 79 are time-barred because his EEOC charge was not filed within 300 days of any adverse employment action prohibited by

either the ADA or Title VII. Further, even if Massa's claims against Local 79 were not time-barred he cannot establish a *prima facie* case of unlawful race or disability discrimination or retaliation by Local 79 under standards applicable to labor unions. Finally, even if he were able to state a prima facie case he cannot show that Local 79's explanations for complained-of actions were a pretext for discrimination.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**a. Massa's employment history prior to his injury in November, 2019.**

1.   Massa was initially employed by co-Defendant United Parcel Service, Inc ["UPS"] as a seasonal employee at UPS' Bayside Center in Tampa, FL in September, 2015. He became a part-time package handler in January, 2016 and remained in that position until his termination (Exhibit 1: Massa dep. 9:16-19 and ex. 1). Massa submitted separate job applications for the seasonal position and the part-time position (Massa dep. 12:23 – 13:3; 16:10-13 and ex. 1).

2.   The Amended Complaint states Massa's race as "Native Hawaiian or Other Pacific Islander" (doc. 12 para. 27). On his employment applications with UPS, Massa stated his race as "white/Caucasian" (Massa dep. ex. 1).

3.   During his employment, Massa was a bargaining unit employee whose terms and conditions of employment were governed by a collective bargaining agreement ['CBA"] between the Teamsters Union and UPS (Exhibit 2; JSUF 3, 4). Massa was aware that the CBA contained a grievance procedure which must be used when an employee complains that his contractual rights have been violated by UPS,

and that there is a time limit to file a grievance. (Massa dep. 35:16 – 36:3; CBA Article 51).

4.   On or about November 19, 2019 Massa injured his knee in a non-work-related accident while playing basketball. (Massa dep. 24:4-15; JSUF 5). It is undisputed that Massa never returned to work at UPS after that date. (Massa dep. 57:9-14; 110:12-17; JSUF 6)).

5.   Before he was injured Massa had filed a number of grievances against UPS which were presented to UPS by Local 79 for processing through the grievance procedure (Exhibit 3: bates nos. MASSA 000497-564). Except for one grievance filed on August 20, 2019 (Exhibit 3, bates 513) which protested Massa's immediate termination for gross insubordination on August 13, 2019 (which was resolved when Local 79's Vice President and Business Agent Thor Johnson obtained UPS' agreement to reinstate Massa with full back pay (Exhibit 4: Johnson affidavit para. 5, 6 and ex. A), grievances filed between June, 2019 and November, 2019 remained pending in the grievance procedure after Massa was injured. These included (among others) 42 grievances which protested against "intent to terminate" disciplinary notices issued by UPS, primarily for unacceptable attendance (bates 497–512 and 514–539), and 15 grievances complaining of "harassment" by UPS supervisors (bates 541-545; 549-551; 553-561). Several of the 15 "harassment" grievances alleged that Article 36 of the CBA (prohibiting discrimination) and Article 37 (requiring management to treat employees with dignity and respect) had been violated, but did not state what type of discrimination had allegedly occurred. Only one grievance specifically stated that

Massa believed he had been "racially profiled" by a supervisor whom Massa had never met before (bates 554, filed August 13, 2019).

**b. Events which occurred between November, 2019 and February 1, 2020.**

6.  Massa notified UPS and Local 79 of his injury via text messages attaching a photograph of his knee to UPS Supervisor Liz Harrill and Local 79 shop stewards Alan Lucciola and Marc "Joey" Howard (Massa dep. 26:2-9). Massa did not produce the text messages during discovery.

7.  Massa was advised by Harrill, Lucciola, and Howard that he should file a request for FMLA leave (Massa dep. 26:10 – 27:17).

8.  Massa's request for FMLA leave was denied (JSUF 7) on December 14, 2019 because he had not worked enough hours in the preceding 12 months to qualify (Massa dep. 27:18 – 28:8 and ex. 3), even though he had been scheduled to work 4 to 5 hours per day, Monday through Friday of each week. (Massa dep. 16:10-19).

9.  Following the denial of FMLA leave, UPS sent Massa a "48 Hour Termination Notice" issued by Bayside Center Manager Tom Teimer on January 2, 2020 via certified mail. The notice stated that if Massa failed to report to work within 48 hours of its receipt he would be terminated for taking an unauthorized leave of absence. (Massa dep. ex. 11). Thereafter, UPS sent Massa a "discharge letter" issued by Teimer on January 14, 2020 via certified mail. The letter stated: "This is official notification that under Article 16, 48 and 52 of the Labor Agreement that your employment with UPS is terminated effective 01/13/2020 for just cause, specifically an unauthorized leave of absence." (Massa dep. ex. 12). Massa denies receiving both

4

letters, (Massa dep. 94:17 – 95:2; 96:12-15), even though they were sent to his correct address where he had lived for twenty years (Massa dep. 5:17-21).

10.  Nobody from Local 79 told UPS to send either the 48-hour notice or the termination notice to Massa. (Exhibit 5: Dore dep. 82:5-17). Local 79 is never notified of potential discipline of employees by UPS before it is issued to the employee. (Johnson aff. para. 9, 13).

11. Massa learned he had been terminated in January, 2020 when his doctor told him his health insurance had been cancelled. (Massa dep. 32:22 – 33:7).

### c.  Massa's communications with UPS and the Union subsequent to February 1, 2020.

12. After Massa's FMLA leave request was denied, UPS supervisor Liz Harrill and Union steward Alan Lucciola told Massa to apply for short-term disability. (Massa dep. 98:7 – 17). The Union does not fill out disability claim forms. (Massa dep. 41:19-21).

13.  The only time Massa spoke with Lucciola was in February, 2020. (Massa dep. 110-18-22; 114:13-24 and ex. 4, page 5 (answer to Interrogatory No. 7)). At that time Massa was not able to perform his job because of his injury (see SUF 17 and 18, *post*).

14. Massa's conversation with Lucciola was about the cancellation of his medical insurance and that he did not qualify for FMLA. (Massa dep. ex. 4, p. 5, answer to Interrogatory No. 7). Although Lucciola told Massa to file a grievance when

his medical insurance was cancelled, Massa never attempted to do so. (Massa dep. 34: 1-10).

15. Massa claims that Lucciola told him that he was going to figure out what was happening and that he would call Massa back, but that Lucciola never did. (Massa dep. 96:2-11). Massa made no further attempt to contact Lucciola, because "I pretty much knew what was going on at that point". (Massa dep. 114:14 – 115:9). Massa knew that he had been fired by UPS "when I talked to Alan and he never called me back". (Massa dep. 32:5-17).

16.   Massa submitted an election of COBRA continuation of his UPS insurance on March 31, 2020 (JSUF 8), more than a month after he spoke with Lucciola (Massa dep. 96:16 – 97:14 and ex. 13). The COBRA notice states that it had been sent to Massa on January 31, 2020.

17. Massa also submitted a claim for short-term disability benefits on March 31, 2020. (doc. 12 ex. E; Exhibit 6: bates nos. JTMASSA000133 – 142). The Physician's Statement (bates 133) states an estimated return to work date of July 1, 2020.

18.   Massa testified in his deposition that he was restricted from doing his job until mid-April, 2020. (Massa dep. 70:8-17). Massa has never provided the actual date he was released to return to work by his physician (cf. Massa dep. 31:9 – 32:10 with Exhibit 7, p. 2, supplemental response to RTP No. 4).

19.   Massa did not notify UPS that he was able to return to work after he was released from his restrictions by his physician, and he did not provide a physician's return-to-work authorization to UPS, because he had been told he had been fired and

it would have been pointless to do so for that reason (Massa dep. 32:3-14; 72:16-18)[1] and because he did not trust either UPS or the Union (Massa dep. 71:24-72:6).

20. On October 13, 2020 Massa and Union steward Marc "Joey" Howard exchanged a series of text messages, screenshots of which are found at Massa dep. ex. 7, which concerned UPS' offer to settle pending grievances which had been filed before his injury. (Massa dep. 51:18 – 52:7) The initial message from Howard was: "The company would like to make you an offer of $250 for your open grievances and also asking for a resignation instead of being fired per labor manager Fred Fore (sic) to clear the log". Massa responded, "That's a big no". Howard's next message was: "Understand. What would you like the resolution to be, or I could let Thor [Johnson] handle it, whichever you prefer." Massa never told Howard what he wanted in order to settle the grievances (Massa dep. 60:7 – 62:6 and dep. ex. 7, p. 1) and he did not accept the offer for Johnson to assist, instead telling Howard "I'll just wait for my lawyer to get this figured out". (Massa dep. ex. 7, p. 2). After speaking with Johnson, Howard texted Massa advising him to file a grievance if he received any discipline and to speak with Johnson if needed. (Massa dep. ex. 7, pp 5-6). Massa did not file a grievance, and he did not call Johnson. (Johnson aff. para. 16).

21. Massa does not contend that Local 79 convinced UPS to make the

---

[1] "I was fired. I was told not to come to work. I was fired". . . .  "Why would I do that when I'm told that I'm fired?  I did not go to work" . . . . "So me doing that would have been absolutely pointless because they would have just told me that I was fired."

settlement offer (Massa: 56:10-16). Dore made the offer on his own initiative because he understood that Massa had been terminated ten months earlier but termination does not automatically resolve outstanding grievances; and he understood that Howard would communicate the offer to Massa to determine if it was acceptable, pursuant to normal practice. (Dore dep. 43:25-44:24; 82:19-25;  Johnson aff. para. 15).

22. Local 79 did not accept Dore's settlement offer after Massa rejected it; and the grievances remained pending. (Johnson aff. para. 15, 16).

23.  On March 22, 2021 Massa and Howard exchanged a series of text messages, screenshots of which are found at Massa dep. ex. 8, which concerned resolution of the open grievances and whether Massa was able to return to work. (Massa dep. 52:8- 21). Massa told Howard that he had been able to return to work "for almost a year", but that he would not return to work "until my lawyer tells me too" (sic). (Massa dep. ex. 8, page 6).

24. On March 23, 2021 Massa sent Howard a text message, screenshots of which are found at Massa dep. ex. 9. (Massa dep. 52:22 – 53:3).

25. On March 25, 2021 Massa and Howard exchanged a series of text messages, screenshots of which are found at Massa dep. ex. 10, during which Local 79 advised Massa to return to work and invited Massa to attend a hearing with Johnson and UPS Labor Manager Dore to discuss his asserted desire to return to work. (Massa dep. 53:4-10) Massa responded "I already told you I have a lawyer. I don't feel I can trust the union." (Massa dep. ex. 10, page 4). Massa did not attempt to return to work and he did not attend the hearing. (Massa dep. 53:11 – 54:1; Johnson aff. para. 17).

26. Massa filed separate charges (dated May 28, 2021) against UPS and Local 79 with the EEOC on June 1, 2021 (JSUF 10; doc. 12 ex. A (UPS) and B (Local 79).

**d. Massa's deposition admissions.**

27. No discrimination by UPS based on race occurred after Massa's injury in November, 2019 (Massa dep. 88:22 – 89:3).

28. No retaliation by UPS based on race occurred after Massa's injury in November, 2019. (Massa dep. 93:20 – 94:10).

29. Massa has no evidence that his complaints of race discrimination played a role in UPS' decision to terminate him. (Massa dep. 105:23 – 106:3).

30. At the time Massa filed his grievances before he was injured, the Union "actually had my back". (Massa dep. 47:22 – 50:6).

31. Massa believes that Local 79 turned against him after his injury because it was too lazy to do the work to keep him employed and/or because the stewards did not want to deal with future discipline and/or grievances when he was returned to work. (Massa dep. 55:24 – 58:4).

32. Massa did not file any grievances after his injury in November, 2019. (Massa dep. 88:22 – 89:3).

33. Massa did not file or attempt to file a grievance protesting his termination by UPS, even though Union stewards Lucciola and Howard had told him to do so. (Massa dep. 34:1-10).

34. Massa did not file or attempt to file a grievance protesting alleged disability

discrimination by UPS. (Massa dep. 62:25 – 63:14).

**MEMORANDUM OF LAW**

## I.    PREFACE.

As an initial matter, Massa's "wrongful discharge" and "retaliation" claims against Local 79 are hopelessly confusing. The original complaint was an incoherent "shotgun pleading" (see doc. 6, Local 79's Motion for More Definite Statement); and the Amended Complaint (doc. 12) is no less murky. The claims consist almost entirely of unsupported conclusory accusations and indiscriminate "bushel basket" legal theories of liability which are repeated in each count, so that it is virtually impossible to discern what violations of which statute were allegedly committed by Local 79 (as opposed to UPS), or what specific actions by Local 79 Massa is complaining about under each statute.

One thing that *can* be discerned from the Amended Complaint is that Massa alleges two discrete forms of discrimination which occurred during two discretely distinct time periods. The Title VII race discrimination and retaliation claims (Counts VII and VIII) are based exclusively on alleged events which occurred on the job before Massa was injured in November, 2019. The sum and substance of these claims appears to be that Local 79 discriminated and/or retaliated against Massa by "ignoring" grievances protesting race discrimination by UPS which he filed before his injury (doc. 12, paras. 134, 146), which (somehow) "caused" UPS to discharge him for racial reasons after his injury. (doc. 12, paras. 135, 147).

In contrast, Massa's ADA claims (Counts III and IV) are based exclusively on events (including his termination by UPS) which occurred *after* he was injured, when he was not at work (JSUF 9). The sum and substance appears to be that Local 79 discriminated and/or retaliated against Massa by "causing" UPS to discharge him because of his disability (doc. 12 paras. 89, 105) and/or by refusing to represent him when he was able to return to work. (doc. 12 paras. 42, 50, 87, 103).

All of Massa's claims are time-barred because Massa failed to file his EEOC charge within 300 days of any statutorily-prohibited action taken against him by either UPS or Local 79. Even if they were not time-barred, the undisputed facts show that Massa cannot establish a prima facia case of race or disability discrimination or retaliation by Local 79 under standards applicable to labor unions. Before his injury Local 79 accepted and processed all of Massa's grievances, including grievances which protested race discrimination by UPS. After his injury Massa never attempted to return to work, and he never filed a grievance protesting his termination by UPS.

## II.   SUMMARY JUDGMENT STANDARDS.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). At the summary judgment stage, the Court must view all evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment". Sprowl v. Mercedes-Benz U.S.

Int'l, *Inc.*, 815 Fed. Appx. 473, 478 (11th Cir. 2020)(quoting Rollins v. Techsouth, Inc., 833 F. 2d 1525, 1529 (11th Cir. 1987). Further, when parties offer competing versions of the facts, and the record "blatantly contradict[s]" the nonmovant's version, such "that no reasonable jury could believe it," the Court should not accept the nonmovant's version. Scott v. Harris, 550 U.S. 372, 380 (2007); Baxter v. Roberts, 54 F.4th 1241, 1257-58 (11th Cir. 2022).

A plaintiff's speculative belief that a defendant acted with discriminatory intent is insufficient to survive summary judgment. See, e.g., Cooper v. Southern Co., 390 F.3d 695, 745 (11th Cir. 2004)(affirming summary judgment where plaintiff relied on conclusory assertions based on her subjective belief); Marshall v. City of Cape Coral, FL, 797 F. 2d 1555, 1559 (11th Cir. 1986)(inferences based on speculation are insufficient to withstand summary judgment); Solliday v. Fed. Officers, 413 F. Appx. 206, 207 (11th Cir. 2011)("conclusory, unsubstantiated allegations by a plaintiff . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion"); Cordoba v. Dillard's, Inc., 419 F. 3d 1169, 1181 (11th Cir. 2005)("unsupported speculation" does not satisfy a party's burden of producing a defense to a summary judgment motion); Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999)(feelings and perceptions are not evidence of discrimination); Ray v. Tandem Computers, 63 F.3d 429, 434 (5th Cir. 1995)(an employee's subjective belief of discriminatory intent is insufficient to defeat summary judgment); Bassano v. Hellman Worldwide Logistics, Inc., 310 F. Supp. 2d 1279, 1280 (N.D. Ga.

2003)("Plaintiff cannot rely on suspicion or conjecture to prove that unlawful discrimination motivated Defendant . . . .").

### III.   MASSA's TITLE VII AND ADA CLAIMS FAIL AS A MATTER OF LAW UNDER STANDARDS APPLICABLE TO UNIONS.

### A. COUNTS VII AND VIII FAIL AS A MATTER OF LAW BECAUSE THERE IS NO EVIDENCE OF RACE DISCRIMINATION OR RETALIATION BY LOCAL 79.

Under Title VII a Union has no vicarious liability for an employer's discrimination, in recognition that union's role in the workplace is different from an employer's role. The employer is in a position to take adverse employment actions against an employee, but a union is not. Booth v. Pasco County, 2010 U.S. Dist. Lexis 80287 at *20-*21 (M.D. Fla. 2010). That is why employer discrimination and union discrimination are addressed in separate sections of Title VII (see 42 U.S.C. ss. 2000e-2(a)(employer) and (c)(union). The union in its representative capacity (as opposed to its capacity of employer of its own employees) is only in a position to contest an employer's adverse employment actions through a bargaining agreement's grievance procedure when an employee files a grievance which alleges a violation of the agreement. See, e.g., Benn v. Florida East Coast Ry. Co., 1999 U.S. Dist. Lexis 14314 at *10 (S.D. Fla. 1999)(a union cannot be held responsible for employer discrimination based on "mere passivity"; the employee must first ask his union to file a grievance on his behalf); Mechmet v. Four Seasons Hotels, Ltd., 825 F.2d 1173, 1178 (7th Cir. 1987)("If a worker doesn't even ask his union to press a grievance for him he can hardly complain that it has failed to represent him"); Flanagan v. Teamsters Local

13

<u>671,</u> 942 F. 2d 824, 229 (2d Cir. 1991)(union not obligated to take action on employee's behalf without the filing of a grievance).

A union is liable under Title VII when it affirmatively "causes" an employer to take racially discriminatory employment actions which it would not otherwise take, as set forth in 42 U.S.C. s. 2000e-2(c)(3) However, it is undisputed that Local 79 did not "cause" UPS to terminate Massa (SUF 10); therefore, Massa's "causation" claim in Count VII fails for that reason alone.  A Union may also be liable under Title VII if it "otherwise discriminates" against employees under the catch-all clause of 42 U.S.C. s. 2000e-2(c)(1).  A Union "otherwise discriminates" if it deliberately and "systematically" refuses to accept or process grievances which protest against an employer's race discrimination, see <u>Goodman v. Lukens Steel Co.,</u> 482 U.S. 656 (1987), or if it does not accept or process an individual employee's grievances because of the employee's race. However, neither of those prohibited acts occurred because Local 79 accepted all of Massa's "harassment" grievances and presented them to UPS for processing through the grievance procedure before he was injured (SUF 5); and Massa admits that Local 79 "had my back" when it did so (SUF 30).

A Union may also be liable under Title VII if it deliberately permits or "acquiesces in" an employer's race discrimination, see <u>Howard v. International Molders and Allied Workers Union, AFL-CIO-CLC,</u> 779 F.2d 1546, 1548 (11th Cir. 1986). Under an "acquiescence" theory a plaintiff must show that the Union's complained-of conduct was intentionally discriminatory. <u>Henderson v. Dade County Police Benevolent Assn.,</u> 2014 U. S. Dist. Lexis  98159 at *19 (S.D. Fla. 2014)(citing

Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008); Booth v. Pasco County, 2010 U.S. Dist. Lexis 80287 at *20 (M.D. Fla. 2010). No prohibited "acquiescence" occurred in this case because (a) Local 79 accepted and processed Massa's grievances before he was injured and thereby did not "acquiesce" in UPS's alleged discrimination then (SUF 5, 30); (b) because UPS did not racially discriminate against Massa after he was injured there was no further discrimination in which Local 79 could "acquiesce" (SUF 27, 28); (c) race discrimination was unrelated to UPS' subsequent termination decision (SUF 29); (d) even if it were related Massa did not file a grievance protesting his termination (SUF 32, 33); and (e) Local 79 did not "acquiesce" to UPS's subsequent offer to settle Massa's pending race-related (and non-race-related) grievances after Massa rejected it (SUF 21, 22). Further, even though filing grievances is a "protected activity" for purposes of a retaliation claim (Count VIII), Massa has no evidence of any subsequent retaliatory act by Local 79 in reaction to his grievances. Accordingly, counts VII and VIII fail as a matter of law.

**B. <u>COUNTS III AND IV FAIL AS A MATTER OF LAW BECAUSE THERE IS NO EVIDENCE OF DISABILITY DISCRIMINATION OR RETALIATION BY LOCAL 79.</u>**

The ADA prohibits "covered entities" from discriminating against employees on the basis of a disability with regard to (in this case) discharge from employment. 42 U.S.C. s. 12112 (a). It also prohibits discrimination in retaliation for the exercise of an ADA-protected right. 42 U.S.C. s. 12203. Although a Union is a "covered entity", like under Title VII it is only responsible for its own acts of disability discrimination or retaliation for an employee's exercise of an ADA-protected right. It is not liable for an

employer's adverse actions which it did not cause or participate in unless it "purposefully or deliberately acquiesced in the prohibited conduct" <u>Dulaney v. Miami-Dade County</u>, 785 F. Supp. 2d 1343, 1353 (S. D. Fla. 2011), *aff'd.*, 481 F. Appx. 486 (11th Cir. 2012). As under Title VII, the asserted acquiescence must be shown to be motivated by intentional discrimination. (<u>Henderson, *supra*,</u> at *19); and, as under Title VII, an employee must file a grievance to invoke the Union's assistance. (<u>Dulaney</u>, 785 F. Supp. 2d at 1356). Further, a Union cannot be held liable for an employer's disability discrimination under an "acquiescence" theory if the employer is not liable for the alleged discrimination. <u>Dulaney</u>, 481 F. Appx. at 491.  Counts III and IV fail as a matter of law because it is undisputed that Local 79 did not "cause" UPS to terminate Massa (SUF 10); and it did not "acquiesce" in UPS's allegedly discriminatory termination in violation of the ADA because (a) Massa never filed, or attempted to file, a grievance (SUF 32, 33, 34); (b) he never attempted to return to work and never asked for Local 79's assistance after he was able to return (SUF 19); (c) he affirmatively rejected Local 79's assistance in his text exchanges with Howard in October, 2020 and March, 2021 (SUF 20, 23, 25); and (d) he therefore cannot point to any adverse act taken by Local 79 in retaliation for any ADA-protected act. Accordingly, Counts VII and VIII also fail as a matter of law.

## IV.   <u>MASSA'S ADA AND TITLE VII CLAIMS AGAINST LOCAL 79 ARE TIME-BARRED.</u>

Title VII requires that a plaintiff must exhaust administrative remedies before filing suit for employment discrimination. The administrative process is initiated by

filing a timely charge of discrimination. For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act. <u>EEOC v. Joe's Stone Crabs, Inc.</u>, 296 F. 3d 1265, 1271 (11th Cir. 2002). The same charge-filing requirements apply to claims of disability discrimination under the ADA. *See* 42 U.S.C. s. 12117(a)("The powers, remedies, and procedures set forth in [Title VII] shall be the powers, remedies, and procedures this subchapter provides"). To be actionable, a discriminatory act must arise to the level of an "adverse employment action", which is defined as a "serious and material change in the terms, conditions, or privileges of his employment." <u>Crawford v. Carroll</u>, 529 F.3d 961, 974 n. 14 (11th Cir. 2008). Because Massa's EEOC charges against UPS and Local 79 were filed on May 28, 2021, all claims which are based on adverse employment actions which occurred prior to August 1, 2020 are time-barred.

Irrespective of the timeliness of Massa's claims against UPS, his Title VII "wrongful termination" and retaliation claims against Local 79 (Counts VII and VIII) are untimely because it is undisputed that no race discrimination or retaliation by UPS occurred after Massa's injury in November, 2019 (SUF 27, 28), and it is undisputed that Massa's subsequent discharge was unrelated to his previous discrimination grievances (SUF 29).[2] Accordingly, any claim that Local 79 "acquiesced" in UPS'

---

[2] It is irrelevant that Massa's "harassment" grievances filed in 2019 remained pending when UPS' settlement offer was communicated in October, 2020. It is long-established law that the charge-filing period commences when the discriminatory acts occur. It is not extended because grievances remain pending in the grievance procedure. <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 261 (1980)(rejecting argument that a grievance proceeding tolls the statute of limitations for discriminatory discharge actions until completion of grievance proceeding); <u>AMTRAK v. Morgan</u>, 536 U.S. 101, 111 (2002)(citing <u>Electrical Workers v. Robbins & Myers, Inc.</u>, 429 U.S. 229, 234 (1976)(rejecting claim

alleged race discrimination ended when the discrimination ended in November, 2019; and the charge-filing period commenced then.

Massa's ADA "wrongful discharge" and retaliation claims against Local 79 (Counts III and IV) are also untimely because Massa knew he had been terminated by UPS as early as January, 2020 and at the latest by March 31, 2020 when he filed his COBRA election form (JSUF 8; SUF 11, 15, 16, 19). The time for filing a charge protesting a discrete one-time act of alleged discrimination or retaliation (including termination) commences when the discrete act is committed. Nat'l  R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 111 (2002); Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S.618, 627 (2007);[3]  EEOC v. Joe's Stone Crabs, *supra,* 296 F.3d at 1371.[4]

Massa did not invoke Local 79's assistance by filing a grievance or otherwise requesting assistance after March 31, 2020 when he had actual knowledge of his termination, or at any time after he was able to return to work in mid-April, 2020 (SUF 15, 16, 17, 18, 19, 20, 25). Accordingly, he cannot establish that he was subjected to an "adverse employment action" by Local 79 within the charge-filing period. Dulaney, supra, 785 F. Supp. 2d at 1356 ("There is also no evidence that the union failed to

---

that charge was timely because the alleged unlawful employment practice was "nonfinal" until conclusion of grievance arbitration procedure).

[3] Overruled by subsequent legislation affecting only unequal compensation claims but not affecting other types of claims such as terminations, see Davis v. Bombadier Transpt. Holdings (USA), Inc., 794 F. 3d 266, 270 (2d Cir. 2015).

[4] Although it is readily apparent from Massa's deposition testimony that he will attempt to argue that his charge was timely because he did not receive "unequivocal notice" of his termination prior to October 13, 2020, that claim is patently unfounded based on his receipt of the COBRA notice, his own admissions, and his subsequent behavior in deliberately choosing not to attempt to return to work. (SUF 15, 16, 18, 19). Acceptance of that argument would mean that Massa's charge-filing period would never commence merely because he refused to accept the certified letters from UPS in January, 2020.

adequately represent him where Dulaney never engaged the Union's representation or requested its assistance in challenging the County's termination"). Accordingly, Massa's Title VII and ADA claims against Local 79 are time-barred because no adverse employment action by either UPS or Local 79 occurred subsequent to August 1, 2020.

Massa's obviously-contrived attempt to revive patently time-barred claims against Local 79 based on his text exchanges with Howard on October 13, 2020 (doc. 12 para. 9, 51, 52, 53) fails because the texts (Massa dep. ex. 7) are not an "adverse employment action". Although Massa contends that he was discharged by UPS when, and because, he rejected the settlement offer which Local 79 allegedly "negotiated" with UPS and/or which "aided and abetted" UPS (doc. 12 para. 9-10, 51-53, 89, 105, 135-136, 147; Massa dep. 18:2 – 20:18), that contention is patently false and absurd, and no reasonable jury could believe it, because (a) Local 79 did not "negotiate" the offer (SUF 21); (b) the plain language of the texts shows that UPS considered Massa to have been discharged ten months earlier; (c) Massa's grievances were concededly unrelated to UPS' discharge decision (SUF 29); and (d) Local 79 did not accept the offer and did not end its processing of the grievances after Massa rejected it (SUF 22, 23). Hence, Massa suffered no new harm to either his previous (discharged) employment status with UPS or his previous (pending) grievance status with UPS because the *status quo ante* did not change as the result of the communication of the settlement offer. Under those circumstances Howard's text exchanges with Massa

cannot be a timely "adverse employment action" by Local 79 as a matter of law (<u>Crawford</u>, <u>supra</u>).

Even if the text exchanges could possibly be considered an "adverse employment action", there is no evidence that they were discriminatorily or retaliatorily motivated (<u>Henderson</u>, <u>supra</u>). Howard's communication of Dore's offer was made pursuant to Local 79's uniform practice (SUF 15). The plain language of Howard's texts indicates that the offer was made by UPS, not Local 79; there is no indication that Local 79 told UPS to make the offer (and it did not); Howard did not advise Massa to accept the offer; there is no indication that there would be any reprisal if Massa rejected the offer (and none occurred); Howard solicited a counteroffer from Massa, which Massa refused to make because he wanted his lawyer to "figure it out"; and Howard advised Massa to file a grievance if he had received discipline, but Massa never did (SUF 20). Under those circumstances no justifiable inference of discrimination is permissible under summary judgment standards.

Accordingly, Massa's ADA and Title VII claims against Local 79 are time-barred because no discriminatory adverse employment action by either UPS or Local 79 occurred within the charge-filing period.

## V.    <u>COUNTS III, IV, VII AND VIII FAIL AS A MATTER OF LAW BECAUSE MASSA CANNOT ESTABLISH A PRIMA FACIE CASE OF RACE OR DISABILITY DISCRIMINATION BY LOCAL 79.</u>

Even if Massa's claims were not time-barred, they are nevertheless completely unfounded. Not only does Massa have no evidence that Local 79 unlawfully discriminated or retaliated against him under the applicable standards (Section III,

*supra*), even worse he cannot state a prima facie case of either race or disability discrimination or retaliation. Title VII claims and ADA claims are analyzed under the same familiar burden-shifting standards set forth in <u>McDonnell-Douglas Corp. v. Green,</u> 411 U.S. 792 (1973). <u>Holly</u>*, supra,* 492 F.3d at 1255. A plaintiff has the burden of proving discrimination or retaliation by a preponderance of evidence. <u>Crawford v. Carroll</u>*, supra,* 529 F.3d at 975. He carries that burden by presenting either direct or circumstantial evidence of discriminatory intent. *Id.* at 975-976. Where (as here) the claim is only supported by circumstantial evidence, the plaintiff must first establish a prima facie case of discrimination or retaliation. *Id.* at 976. If the employee establishes a prima facie case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* If the defendant makes that showing, the burden shifts back to the employee "to show that the [defendant's] stated reason was pretext [for discrimination]. *Id.*

## A. <u>TITLE VII RACE DISCRIMINATION AND RETALIATION.</u>

To establish a prima facie case of Title VII race discrimination (Count VII) Massa must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly situated individual outside his protected class. <u>Maynard v. Bd. of Regents,</u> 342 F.3d 1281, 1289 (11th Cir. 2003); <u>McCann v. Tillman,</u> 526 F.3d 1370, 1373 (11th Cir. 2008). Massa cannot meet prong (3) because Local 79 accepted and processed his discrimination grievances, and he therefore did not suffer an "adverse employment

action" by UPS which Local 79 "caused" or in which Local 79 "acquiesced". Even if he could meet prong (3) he cannot meet prong (4) because he can point to no comparators who received more favorable treatment in grievance handling. Moreover, Massa's admission that Local 79 "had my back" before his injury (SUF 30) belies and negates any inference of racial bias by Local 79.

   To establish a prima facie case of Title VII retaliation (Count VIII) a plaintiff must show that: (1) he engaged in an activity protected by the Act; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. Johnson v. Booker T. Washington Broad. Svc., Inc., 234 F.3d 501, 507 (11th Cir. 2000). Unlike in a discrimination claim, a plaintiff is only required to show that the challenged action is "materially adverse". An action is "materially adverse" if it would have dissuaded a reasonable worker from filing a charge of discrimination. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260-61 (11th Cir. 2001). To establish a causal connection a plaintiff must show that the protected activity and the adverse employment action are "not wholly unrelated". McCann, supra, 526 F.3d at 1376); Shotz v. City of Plantation, FL, 344 F.3d 1161, 1180 n. 30 (11th Cit. 2003). However, the temporal interval between the protected activity and the adverse action must be "very close". Even a three-month interval is too long. Brown v. Alabama Dept. of Transportation, 597 F. 3d 1160, 1181 (11th Cir. 2010).

   Although filing race discrimination grievances is a "protected activity" sufficient to meet prong (1), Massa cannot meet prongs (2) or (3) because he cannot

establish any connection between his grievances and his termination, and he suffered no "materially adverse" employment action by Local 79 in reaction to his grievances. Even if Massa could meet prong (2), he still cannot meet prong (3) because he cannot establish a causal connection between his grievance-filing and any subsequent act by either UPS or Local 79. Even if he could establish both prongs he cannot overcome Local 79's nondiscriminatory reason for communicating Dore's offer to settle the grievances pursuant to its uniform practice, from which he suffered no harm (SUF 21, 22).

### B. ADA DISCRIMINATION AND RETALIATION.

To establish a prima facie case of ADA discrimination (Count III) a plaintiff must show that at the time of an adverse employment action he (1) had a disability; (2) was a qualified individual; and (3) was subjected to unlawful discrimination because of the disability. Batson v. Salvation Army, 897 F.3d 1320, 1326 (11th Cir. 2918)(citing Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255-56 (11th Cir. 2007)). The third prong (causation) requires a higher standard than Title VII. It requires the plaintiff to show that "the discriminatory motivation was the but-for cause of the adverse employment action". Collier v. Harland Clarke Corp., 820 F. Appx. 874, 879 (11th Cir. 2020)(citing Holly at 1263 n. 17). A "mixed motive" analysis (available under Title VII) is not available under the ADA. Barber v. Cellco P'ship, 808 F. Appx. 929, 934-35 (11th Cir. 2020)(citing Univ. of Tex. Southwestern Med. Ctr. v. Nassar, 570 U.S. 338, 343, 359-60 (2013)). Assuming arguendo that Massa were a "qualified individual" under prong (2) even though he could not work, Massa cannot meet prong

(3) because (a) Local 79 did not "cause" Massa's termination; (b) Massa's pending grievances were unrelated to disability discrimination by UPS, and Local 79 did not terminate its processing of the grievances after Massa was injured; (c) Massa did not invoke Local 79's assistance by filing a grievance when he learned he was terminated; (d) Massa did not attempt to return to work and he did not invoke Local 79's assistance when he was able to return to work, contrary to his allegations (doc. 12 para. 86, 87, 102, 103, 104); and (e) Massa deliberately refused Local 79's assistance in attempting to return him to work during the text exchanges with Howard in October, 2020 and March, 2021.

Although Massa will presumably argue that Local 79 intentionally discriminated against him when Lucciola did not call him back after they spoke in February, 2020 (SUF 13, 14, 15),[5] any such inference is completely impermissible simply because Lucciola did *not* say he would not assist Massa, only that he would "call [Massa] back" after he had figured out what had happened with regard to UPS' denial of FMLA leave and cancellation of his health insurance.  Lucciola told Massa to file a claim for disability benefits (which Massa did on March 31, 2020) and he told Massa to file a grievance (but Massa never did); and Massa never followed up with Lucciola (or with Howard or Johnson, who had previously assisted him with discipline grievances) when he did not hear back. (SUF 13, 14, 15, 32, 33, 34). No inference of intentional disability discrimination can be derived from that conversation, or from

---

[5] For purposes of this motion only, Local 79 assumes as true Massa's version of his conversation with Lucciola.

Lucciola's failure to call Massa back, because Lucciola's instruction to file a grievance belies and negates any justifiable inference of discriminatory intent to refuse to represent him if he did so. Further, any discriminatory inference is belied and negated by Lucciola's and Johnson's previous willingness to assist Massa by filing his grievances and convincing UPS to reinstate him from a summary discharge before he was injured (SUF 5), and by Local 79's subsequent expression of willingness to assist him during the text exchanges with Howard in October, 2020 and March, 2021, which Massa refused (SUF 20, 23, 24, 25). Accordingly, Massa cannot establish a prima facie case of intentional disability discrimination by Local 79.

To establish a prima facie case of ADA retaliation a plaintiff must show: (1) he engaged in an ADA-protected activity; (2) he was subjected to an adverse employment action; and (3) there is a causal connection between his participation in the protected activity and the adverse employment action. Bass v. Bd. of County Comm'rs., 256 F. 3d 1095, 1117 (11th Cir. 2001). Even assuming *arguendo* that an "acquiescence" theory were available in an ADA retaliation claim (which is dubious at best), Massa cannot meet prong (1) because he did not engage in any ADA-protected activity after he notified UPS and Local 79 of his injury. Inquiring about FMLA leave and making a claim for disability benefits (doc. 12, para. 100) are not "protected acts" under the ADA;[6] so there can be no "acquiescence" by Local 79 to UPS's alleged retaliation for

---

[6] Filing a claim for disability benefits is *not* an ADA-protected act. Boyce-Idlett v. Verizon Corporate Servs. Corp, 2007 U.S. Dist. Lexis 64819 at *25 (S.D.N.Y. 2007)("The plaintiff believes, erroneously, that requesting and taking a disability leave of absence are activities protected by the ADA's anti-retaliation provision. However, asserting and exercising one's contractual rights to fringe

engaging in those non-protected acts, as Massa alleges (doc. 12, para. 102). Even if Massa could meet prong (1) he cannot meet prong (2) because he cannot show that he was subjected to any adverse employment action by Local 79 subsequent to his protected acts. Even if he could meet prong (2) he cannot meet prong (3) because he cannot establish a causal connection between any claimed protected act and any subsequent adverse act by Local 79. Accordingly, Massa cannot state a prima facia case of retaliation by Local 79 based on disability.

Massa's subjective belief that the Union stewards and Local 79, whom Massa admitted "had my back" before his injury, later turned against him because the stewards did not want to deal with constant discipline and grievances if he returned to work (SUF 30, 31) is clearly insufficient to defeat summary judgment. Although Machiavelli might be pleased with Massa's reasoning, it is nothing more than rank speculation based on mere suspicion which, as discussed previously, is completely unsupported by any evidence and is flatly contradicted by Local 79's previous assistance of Massa and its subsequent expressions of willingness to assist him. Yet, Massa's unfounded suspicion that Local 79 acted or failed to act with discriminatory motives is the only support he has for his Title VII and ADA claims against Local 79. Those claims are frivolous; and this suit against Local 79 should never have been brought.

---

benefits is not the same and does not qualify as opposing  an employer's acts or practices made unlawful by the ADA . . . ."). Asserting claims for benefits provided by other statutes are also not protected acts under the ADA. Johnston v. Henderson, 144 F. Supp. 2d 1341, 1354 n. 5 (S.D. Fla. 2001).

## CONCLUSION

Irrespective of the timeliness or the merit of any claims against UPS, under the legal standards applicable to unions Massa's claims against Local 79 are both time-barred and completely unfounded in fact and in law. Accordingly, summary judgment in favor of Local 79 on Counts III, IV, VII, and VIII is warranted, and is required.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing has been electronically filed using the CM/ECF e-filing portal and served via email to Derek P. Usman, Esq., Usman Law Firm, P.A., 20701 Bruce B. Downs Blvd., Suite 207, Tampa, FL 33647, at derek@usmanfirm.com, Brian L. Lerner, Esq., Kim Vaughan Lerner LLP, 312 SE 17th Street, Suite 300, Fort Lauderdale, FL 33316, at blerner@kvllaw.com, and William R. Liles, Esq., Schmoyer Reinhard LLP, 8000 IH 10 West, Suite 1600, San Antonio, TX 78230, at wliles@sr-llp.com on this 24th day of April, 2023.

THOMAS J. PILACEK & ASSOCIATES
Tuskawilla Office Park
1306 Town Plaza Court
Winter Springs, FL 32708
Telephone: 407-660-9595
Facsimile: 407-660-8343
Email: tpilacek@pilacek.com
       amalpartida@pilacek.com

By: */s/ Thomas J. Pilacek, Esq.*
     Thomas J. Pilacek
     Florida Bar No. 143576

*Counsel for Local 79*

27