IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JONATHAN TRENT MASSA,<br><br>   *Plaintiff*,<br><br>v.<br><br>TEAMSTERS LOCAL UNION 79 and UNITED PARCEL SERVICE, INC.<br><br>   *Defendants*. | Case No. 8:22-cv-796-KKM-JSS |

**DEFENDANT UNITED PARCEL SERVICE, INC.'S
REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Massa's response fails to overcome UPS summary judgment challenges for the following reasons. Throughout his response, Massa complains about UPS discriminating and retaliating against him in work assignments, canceling his benefits, not accommodating his disability, not engaging in the interactive process, and breaching the CBA. Massa does not dispute that he has pled wrongful discharge claims under the ADA and Title VII and no others. *See* ECF34 at 23-24. Summary judgment is proper as to all claims.

**I.    Massa presented no admissible, competent evidence that his discharge date was October 13, 2020, and not February 5, 2020.**

Massa argues that the October 13, 2020 text message offering to settle his outstanding grievances was his actual discharge date. ECF44 at 7-8. Massa does not respond to the fact that the text messages also confirm his January 2020 termination letter had already been sent. Massa also does not dispute that the October 13, 2020 text message is an inadmissible compromise offer. Instead, Massa makes the following meritless contentions.

First, Massa argues he was not discharged on February 5, 2020, because such discharge would have violated the CBA. *Id.* at 3-4. Just because an employee is discharged in breach of an employment contract does not mean the employee has not been discharged; it merely means they can seek redress through the CBA's contractual remedies. *See Vaca v. Sipes*, 386 U.S. 171, 185 (1967). Furthermore, Thor Johnson's testimony about his understanding of the CBA is inadmissible

1

because he is testifying to the contents of a document and contract and is therefore not the best evidence of the CBA's provisions. *See* FED. R. EVID. 1001-1008.

Second, Massa states he never received his termination notice or other disciplinary mailings from UPS after his knee surgery, as he claims the CBA requires, and he suggests his parents or brother could have received the letters. *See* ECF44 at 5. Read carefully, Massa's response does not actually dispute UPS's ten facts establishing that he was, in fact, aware that he had been discharged in February or March 2020. *See id.*; ECF34 at 11. There is no dispute that UPS discharged Massa as of February 2020, and Massa believed he was discharged in February or March 2020. *See* ECF44 at 23 (admitting Massa believed ADA was violated when he learned of cancelation of benefits and possible termination).

Third, Massa argues that a text message he supposedly sent on March 25, 2021, constituted a "written grievance" that precluded his discharge from becoming final. *Id.* at 6.[1] But Massa's termination notice was issued in January 2020. Because he did not timely file a written grievance, his termination became final on February 5, 2020. Even according to Massa, he was discharged on October 13, 2020, long before his March 25, 2021 text message. His March 25, 2021 text message fails to raise a fact issue that he was discharged on October 13, 2020.

---

[1] Massa's allegation here raises a question of whether the *Garmon* doctrine precludes the Title VII or ADA claims; meaning Massa's dispute under the CBA and NLRA must be resolved in the exclusive jurisdiction of the NLRB. If the Court finds this issue dispositive, UPS respectfully requests an opportunity to brief this alternative ground for summary judgment.

Fourth, Massa cites his own deposition testimony as evidence to show how "[he] understood the offer" and Johnson's testimony that "[m]onetary offers are extended to *active* employees without outstanding grievances." ECF44 at 7. Massa misstates Johnson's testimony, which merely explains that a nominal monetary amount is offered to settle stale grievances. ECF34-12 at 115:9-25. Johnson did not testify this practice was for "active" employees or "only" for such employees. *Id.* Additionally, Massa's testimony about how he (mis)understood the October 13, 2020 text message is insufficient to raise a fact issue as to his termination date, which is established by UPS's records. ECF34-3 at 81; ECF34-4 at 2; ECF34-5 ¶ 2. Because Massa's response fails to raise a fact issue that he was discharged on October 13, 2020, rather than February 5, 2020, his EEOC charge was untimely filed and his claims are time-barred.

## II. Massa presented no competent evidence that he was "qualified."

Massa's response fails to dispute that he was never qualified for his position because of his excessive absenteeism. ECF34 at 24. In short, showing up to work regularly is an essential job requirement and, even before his knee injury, Massa was unwilling and unable to show up to work regularly. *Id.* Because Massa does not dispute this independent reason for his lack of qualification, other than to attribute his absenteeism to vague accusations of discrimination, Massa has failed to show that he was "qualified" individual for his wrongful discharge claims.

Massa responds that, in his subjective lay opinion, he could have performed his essential job functions as early as June 2020. ECF44 at 16. However, Massa

3

was discharged on February 5, 2020. At the time of his discharge, Massa's injury rendered him unable to perform his essential job functions and he therefore cannot make a prima facie showing of any of his claims. Also, Massa does not claim he was ever medically released as capable of performing his essential job functions at any time. ECF44 at 16.

Massa's second response is that he could have performed light work and "injured employees were routinely provided alternate positions." *Id*. But Massa has not identified any other "light work" position that was available and also within his medical restrictions. *See id*. Furthermore, this complaint is truly one of an ADA failure-to-accommodate claim, which Massa has never pled. *See Mattingly v. Univ. S. Fla. Bd. Trustees*, 931 F. Supp. 1176 (M.D. Fla. 2013) (reassignment is not reasonable accommodation if no position is vacant). Because Massa cannot show the "qualification" element for his claims, summary judgment is proper.

### III. Massa has not cited evidence raising a fact issue as to disparate treatment.

UPS has argued that Massa has been unable to present evidence that any other similarly situated employee outside the protected class was treated more favorably than he was in any way. Massa responds that he need not show that any other similarly situated employee was treated favorably under the "convincing mosaic" framework. ECF44 at 9-10. But that framework requires the employee to show the "systematically better treatment of similarly situated employees," which

Massa has not done. *See Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019). Thus, summary judgment is proper on this ground as well.

### IV.     **Massa did not engage in any ADA or Title VII protected activity.**

Massa refers generally to his grievances to show he complained of race discrimination. ECF44 at 21. But Massa is unable to cite even one grievance that mention *race* discrimination, though some grievances complain generally about unspecified discrimination. ECF44-4 & ECF 44-5. These grievances are not protected by Title VII because they do not actually oppose, either expressly or impliedly, discrimination on the basis of race. *See Little*, 103 F.3d at 960.

Massa also argues that his complaint to his supervisor, Liz Harrill, about UPS cancelling his medical insurance benefits was an activity protected by the ADA. ECF44 at 22. But the ADA doesn't guarantee medical benefits. *See* 42 U.S.C. § 12112. The ADA guarantees equal opportunity to individuals with disabilities. *Id*. It is the FMLA that guarantees protected leave and continuation of medical benefits. 29 U.S.C. § 2614. Massa has not alleged an FMLA claim here. Indeed, his excessive absenteeism rendered him unqualified to take FMLA leave when he injured his knee. Thus, without any activity protected by the ADA or Title VII, Massa cannot maintain retaliation claims under those statutes.

### V.      **The lack of temporal proximity between Massa's injury and his termination precludes his retaliation claims.**

The Court need not reach the prima facie case of Massa's retaliation claims if it concludes he was, in fact, discharged on February 5, 2020. The Court would

5

reach the prima facie case if Massa could prove he was discharged on October 13, 2020, as he alleges. However, the protected activities that Massa alleges occurred in and before November 2020. Thus, the 11-month temporal gap is too great to make a prima facie showing of a causal link for Massa's retaliation claims. Without any authority or explanation, Massa's response states a jury could find otherwise. ECF44 at 27. Massa's response is simply contrary to the law of this district and 11th Circuit and, as such, is facially invalid.

## VI. Massa cites no evidence and makes no argument in support of his pretext allegations.

Because Massa admits he was not able to work until June 2020 and had no leave available, Massa cannot show UPS's legitimate nondiscriminatory reason for discharging him was a pretext for unlawful discrimination or retaliation. Massa argues that despite being injured while playing basketball outside of work and off of UPS's property, and despite being totally unable to work in his job position, he was entitled to remain employed at UPS indefinitely. Although Massa states he never requested indefinite leave, his arguments establish that's precisely what he expected. ECF44 at 15. Massa's only other argument is that he "has established the inconsistent application of policies." *Id.* at 29. Massa provides no citations to summary judgment evidence or any explanation in support of this contention. *See id.* It should therefore be rejected. Without a showing of pretext, summary judgment is proper on Massa's claims.

6

**VII.  The Court should disregard Massa's new "cat's paw" theory.**

For the very first time in his suit, Massa argues in his summary judgment response that Harrill's knowledge of Massa's injury may be attributed to Fred Dore when Dore sent Massa the October 13, 2020 text message, which Massa claims was his termination notice. *Id.* at 11. First, this argument is inappropriately asserted for the first time in a summary judgment response. See Cahvous v. City of St. Petersburg, 576 F. Supp. 3d 1040 (M.D. Fla. 2021). Second, the "cat's paw" theory lacks merit based on UPS's prior arguments regarding the October 13, 2020 text message. *See supra*. Third, the evidence Massa cites in support of Harrill's communication to Dore relates to the 48-hour termination notice UPS sent, which was in January 2020, not with the October 13, 2020 texts. Wholly unsupported by any pleadings or evidence, Massa's new "cat's paw" theory simply lacks merit.

**VIII. Summary judgment is proper as to all claims.**

Massa's wrongful discharge claims are time-barred because he was discharged in February 2020 and did not file his EEOC charge until well over 300 days thereafter. Massa has failed to present evidence that he was qualified for his position, and has failed to raise an inference of disparate treatment. Massa's retaliation claims fail at the prima facie stage as well because Massa did not engage in ADA or Title VII protected activities and cannot show temporal proximity to establish a causal link. Massa has also failed to show pretext. For these reasons, UPS requests that the Court grant this motion, dismiss all of Massa's claims, and award all other relief to which UPS has shown itself entitled.

Respectfully submitted,

*/s/ William R. Liles*
William R. Liles (admitted *Pro Hac Vice*)
Texas Bar No. 24083395
wliles@sr-llp.com
Schmoyer Reinhard LLP
8000 IH 10 West, Suite 1600
San Antonio, TX 78230
Phone: (210) 447-8033
Fax: (210) 447-8036

Brian L. Lerner
Fla. Bar No. 177202
Kim Vaughan Lerner LLP
312 SE 17th Street, Suite 300
Fort Lauderdale, Florida 33316
Telephone: (954) 527-1115
Facsimile: (954) 527-1116
E-mail: blerner@kvllaw.com

**ATTORNEYS FOR DEFENDANT UNITED PARCEL SERVICE, INC. (OHIO)**

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2023, I certify that a true and correct copy of the foregoing document was served via *email* on all counsel or parties of record on the Service List below.

| | |
|---|---|
| Derek P. Usman<br>Florida Bar No. 0120303<br>Email: derek@usmanfum.com<br>THE USMAN LAW FIRM, P.A.<br>505 E Jackson Street, Suite 305<br>Tampa, FL 33602 | Thomas J. Pilacek<br>THOMAS J. PILACEK & ASSOCIATES<br>Tuskawilla Office Park<br>1318 Town Plaza Court<br>Winter Springs, FL 32708<br>Email: tpilacek@pilacek.com |
| **ATTORNEY FOR PLAINTIFF** | **ATTORNEYS FOR DEFENDANT TEAMSTERS LOCAL UNIONN 79** |