THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JONATHAN TRENT MASSA,

    Plaintiff,

v.                        Case No.: 8:22-cv-796-KKM-JSS

TEAMSTERS LOCAL UNION 79
and
UNITED PARCEL SERVICE, INC.

    Defendants.
_____/

## DEFENDANT LOCAL 79's REPLY TO PLAINTIFF's MEMORANDUM OPPOSING SUMMARY JUDGMENT

Pursuant to Local Rule 3.01(d), Defendant TEAMSTERS LOCAL UNION 79 replies to Plaintiff MASSA's memorandum (doc. 42) in opposition to Local 79's Motion for Summary Judgment (doc. 32).

    I.    MASSA'S CLAIMS AGAINST LOCAL 79 ARE TIME-BARRED.

Massa's response to Local 79's argument that his claims are time-barred (see doc. 32 Section IV) is based exclusively on his own unsupported assertion that the October 13, 2020 text exchanges with Union Steward Joey Howard was an "adverse employment action" because that was Massa's "understanding".[1] But Massa's alleged "understanding" is at war with the record facts. It does not change the undisputed facts that UPS had fired Massa ten months earlier; that Massa knew he had been fired when he filed for COBRA continuation eight months earlier, and that Massa intentionally

---

[1] (Doc. 42, p. 11-12: "However, Massa understood the offer as an ultimatum to "either be fired [or] get paid $250 to resign.").

did not attempt to return to work after he was medically released six months earlier because he had been fired (doc. 32 pp. 18-20). It is also contradicted by the plain language of the text exchanges which notifies Massa that UPS' position was that Massa had been fired ten months earlier (PX 1, bates 373). Finally, Massa points to no adverse actions taken against him by UPS or Local 79 after October 13, 2020. All of this demonstrates that Massa's alleged "understanding" was unsupported in fact, and that no reasonable jury could believe it.

Although Massa attempts to overcome this undeniable failure of fact by claiming that discipline for non-cardinal infractions (such as daily attendance violations) are not final until they are resolved through the grievance procedure, Massa was not fired for any violations to which his pending grievances related. He was fired for a different reason – taking an unapproved leave of absence - *after* his pending attendance grievances were filed. Massa's termination became final under Article 52 of the bargaining agreement when Massa did not grieve it within 10 working days.[2] In sum, Massa cannot point to any evidence that he was terminated on October 13, 2020, or that any other "adverse employment action" occurred within the charge-filing period. His claims are time-barred.

II.     MASSA FAILED TO GRIEVE HIS TERMINATION.

---

[2] Massa also misrepresents Johnson's testimony by asserting that grievance settlement offers are reserved for "active" employees (doc. 44 p. 12). Johnson said no such thing. Johnson's testimony shows only that Local 79 routinely communicates UPS's offers to settle pending grievances to the employee.

Massa blames Local 79 for failing to assist him despite the fact that he never filed a grievance after being advised by the Union stewards to do so. His claims are based entirely on contractual protections which Massa deliberately refused to invoke. He attempts to excuse his own deliberate inactions by first claiming that his initial notification of his injury via text message should be construed as a "grievance" (doc. 42 p. 11); however, at that time there was no (alleged) contract violation by UPS, so there was nothing to grieve.[3] Next, Massa misrepresents Johnson's testimony, claiming that it was not necessary to use Local 79's approved grievance form. Johnson said precisely the opposite;[4] and Massa, who was admittedly familiar with the grievance procedure, had previously filed a multitude of grievances using the approved form (see doc. 32 SUF 5 and Exhibit 3). Finally, citing no authority, Massa asserts that filing a grievance concerning his termination would have been "futile" because Local 79 had allegedly "ignored" grievances before he was injured. That argument fails because it does not excuse the requirements of Article 51 of the CBA (p. 232) that the employee must first submit a *written* grievance to the steward who then gives it to the employer, and that the grievance is referred to the Union (Johnson) *only after* the steward and UPS are unable to agree on a resolution. The fact that Massa continued to file grievances until he was injured shows that he did not consider them to be futile

---

[3] (See CBA Article 51, defining a "grievance" as a dispute regarding "interpretation, application or observance of any provision of this Agreement").

[4] "Q. Okay. Could I – do I have to use the form?  A. I would say yes. I don't know that it's outlined in the – I don't know if I've ever seen it outlined. So if you want a grievance to be considered proper, you should use the form that was designed by the Local Union. You shouldn't just write your own piece of paper". (Johnson dep. 68:22 – 69:5).

before his injury. His discipline grievances were not futile because they kept him employed until they were resolved through the grievance procedure – i.e., but for his grievances Massa would have been fired long before he was injured; and the fact that a large number of Massa's grievances remained pending after his termination shows that they were not "ignored.[5] Finally, there is no evidence that the stewards dissuaded or prevented Massa from filing a grievance after he was injured. To the contrary, the stewards repeatedly encouraged him to do so (doc. 32 SUF 14, 20, 25, and Massa dep. ex. 10).[6]

### III. THERE IS NO EVIDENCE OF DISCRIMINATION BY LOCAL 79.

Massa fails to overcome Local 79's argument that there is a complete lack of evidence of discrimination by Local 79 (doc. 32, section III). His reliance on the "convincing mosaic" standard tacitly admits that he cannot establish a prima facie case under the *McDonnell-Douglas* framework; (doc. 32, section V); and his evidence of a "convincing mosaic" is totally lacking. The "convincing mosaic" standard requires

---

[5] Massa falsely points to the asserted "disappearance" of a three-page grievance against his supervisor, Harrill, as evidence that his previous grievances were "ignored" (doc. 44 p. 22). The referenced grievances were filed on June, 18, 2019 (regarding "Liz's lies"); and they did not "disappear". They were provided by Local 79 to both the EEOC (Plaintiff's Summary Judgment Exhibit 5, bates nos. 297, 298, and 299) and to Massa in this lawsuit (Local 79's Summary Judgment Exhibit 3, bates nos. 543, 544, and 545). They, as well as the other grievances in Local 79 Exhibit 3, remained pending after Massa's termination and were part of Dore's settlement offer in October, 2020.

[6] It is logically impossible that a Union could breach its duty of fair representation by failing to represent an employee in a grievance which he did not file and *refused* to file. The "futility" argument, raised for the first time in Massa's memorandum, implicates questions of federal preemption because breach of the duty of fair representation is prohibited by Section 8(b)(1)(A) of the National Labor Relations Act, 29 USC s. 158(b)(1)(A), and is within the exclusive initial jurisdiction of the National Labor Relations Board. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). Such a claim must be brought in a "hybrid" breach of duty/breach of contract claim pursuant to Section 301 of the Act, 29 USC s. 185, within 180 days. *Del Costello v. Teamsters,* 462 U.S. 151 (1983).

the employee to show the "systematically better treatment of similarly situated employees", (see *Lewis v. City of Union City, GA,* 934 F.3d 1169, 1185 (11th Cir. 2019), or other evidence that discrimination was a factor in the decisions of which the employee complains (see *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Massa has no such evidence. He cannot point to any "similarly situated" employee who was treated more favorably by Local 79 in grievance handling; and he has absolutely no evidence that race or disability was a factor in any of Local 79's asserted actions or inactions other than his self-serving assertions. For example, there is no evidence of discriminatory statements made to Massa by Local 79 or its stewards; there is no evidence that Local 79 or its stewards made discriminatory statements to other employees or to UPS; and there is no evidence to show that Local 79's (including the stewards') relationship with UPS was anything but adversarial regardless of race or disability (as demonstrated by the October 13, 2020 and March, 2021 texts).

Oddly, Massa relies on Thor Johnson's attempts to assist him in March, 2021 as evidence of his unfounded and confusing theory, raised for the first time in his memorandum, that the stewards were the real culprits and the "ultimate decision-makers", claiming that they were "lying in wait" for the computer-generated discipline system to take its course which resulted in his termination, while at the same time failing to prevent his termination by its operation and concealing Massa's injury or other complaints from Johnson. Besides being factually unsupported, that argument is nonsensical on many levels. First, there is no evidence that the computer-based discipline system is discriminatory. To the contrary, it depends on workplace

occurrences which are neutral as to protected classes or specific employees; and no "disparate impact" claim was made to the EEOC or pled in this lawsuit. Second, Massa fails to explain what authority Local 79 has to force UPS to stop using its discipline system, or to prevent UPS from issuing discipline prior to its issuance. There is no such authority in the bargaining agreement. Third, Massa has no evidence that the stewards even knew that UPS had issued the 48-hour notice or the termination letter (doc. 32 SUF 9, 10). The letters were sent directly to Massa from UPS's district office in Orlando rather than from the UPS Center in Tampa where Massa worked; and the stewards were not copied with them. Fourth, Massa's memorandum misrepresents Massa's testimony, claiming that Union Steward Lucciola "assured him that the matter would be resolved" while permitting discipline to proceed (doc. 44, p. 26). Massa *never* testified that Lucciola said that. Finally, there is no evidence that the stewards deliberately concealed anything from Johnson. Massa's situation never got to Johnson's level before March, 2021 simply because Massa disregarded the stewards' instructions to file a grievance over his disability benefit/discipline issues, and a local hearing had not been scheduled on Massa's pending grievances on previous unrelated issues due to the pandemic. The October 13, 2020 texts notified Massa that Johnson was available to assist Massa with his benefit and/or discipline issues; but Massa refused to involve Johnson because he wanted his lawyer to handle them. Massa's claim that Local 79 failed to represent him when he never filed a grievance and he rejected Local 79's offers of assistance defies the record facts, logic, and the law.

IV.   THERE IS NO EVIDENCE OF RETALIATION BY LOCAL 79.

Other than his own unsupported speculation Massa has no evidence which connects his grievance-filing activities prior to his injury (allegedly under Title VII based on race) with his termination for a subsequent, completely unrelated, reason, or with Local 79's asserted actions or inactions after his termination. And, Massa stubbornly continues to insist that his claim for FMLA leave and his claim for disability benefits are "protected activities" under the ADA, despite the established law to the contrary. Accordingly, there is no prima facie case of race or disability retaliation by Local 79 under *any* standard.

## CONCLUSION

Massa's claims of Title VII and ADA discrimination and retaliation are time-barred. Further, Massa has no evidence of discrimination or retaliation by Local 79 sufficient to create a disputed issue of material fact; and he cannot establish a prima facie case. Accordingly, Summary Judgment is due to be granted.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing has been electronically filed using the CM/ECF e-filing portal and served via email to Derek P. Usman, Esq., Usman Law Firm, P.A., at derek@usmanfirm.com, and William R. Liles, Esq., at wliles@sr-llp.com on this 13th day of June, 2023.

> THOMAS J. PILACEK & ASSOCIATES
> Tuskawilla Office Park
> 1306 Town Plaza Court
> Winter Springs, FL 32708
> Telephone: 407-660-9595
> Facsimile: 407-660-8343
> Email: tpilacek@pilacek.com

amalpartida@pilacek.com

By: */s/ Thomas J. Pilacek, Esq.*
   Thomas J. Pilacek
   Florida Bar No. 143576

*Counsel for Local 79*